Trung Van TRUONG; Nga Thi Lu; Martina My Van Truong; Paolo Vinh Tuan Truong, Petitioners,

v.

IMMIGRATION NATURALIZATION AND SERVICES, Respondent.

No. 01–71507.

INS Nos. A73–910–930, A73–910–931, A73–910–932, A73–910–933.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 2002.

Decided Feb. 27, 2003.

Before SCHROEDER, Chief Judge, W. FLETCHER, Circuit Judge, and WEINER,* District Judge.

## ORDER

This court's Memorandum disposition filed October 16, 2002 is hereby WITHDRAWN and replaced with the attached disposition.

With the filing of this new disposition, the petition for rehearing, filed December 13, 2002, is DENIED.

## MEMORANDUM **

Trung Van Truong and his family petition for review of the Board of Immigration Appeals' ("BIA") decision reversing the immigration judge's ("IJ") order granting their applications for asylum. Truong and his wife escaped Vietnam in 1979, and lived in Italy with their children from 1980 to 1991. The BIA determined that the Truongs were barred from asylum because they had firmly resettled in Italy prior to entering the United States. We agree with the BIA's determination that the Truongs were firmly resettled in Italy, but because the BIA did not consider credible evidence supporting the Truongs' claim for asylum based on persecution in Italy, we grant the petition for review and remand for further proceedings.

---

* The Honorable Charles R. Weiner, Senior District Judge for the Eastern District of Pennsylvania, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Truong and his wife Nga Thi Lu ("Mrs. Truong") are natives and citizens of Vietnam. Their children, Martina Truong and Paolo Truong, were born in Italy, but are not Italian citizens. Truong and his family lived in Italy from 1980 to 1991. On June 17, 1991, the Truongs were admitted to the United States as nonimmigrant visitors for pleasure with authorization to remain in the United States until December 16, 1991. The Truongs held a travel permit from Italy authorizing reentry, which was valid until September 2, 1992. The Truongs remained in the United States past both dates.

In his application to the Immigration and Naturalization Service ("INS") for asylum, Truong wrote that he had been caught and tortured by communist guerrillas while he was a sergeant in the anti-communist army of South Vietnam during the Vietnam War. After the war, he became an active member of the underground anti-communist organization, Front for the Liberation of Vietnam. In April 1979, Truong escaped from Vietnam by boat with his wife and spent a year in a refugee camp in Malaysia. In August 1980, he and his wife entered Italy as refugees sponsored by the Vatican. In Italy, Truong and his family were given a resident status that required annual renewal.

The Truongs faced persecution and discrimination in Italy. According to Truong's application and his testimony before the IJ, communist members of the Vietnamese Embassy and local communists in Italy harassed him and his family. Truong testified that around 1985, five years after the family arrived in Italy, a Vietnamese communist in the area where he lived informed the Italian communists about him. After that, and after Truong refused to join the Italian communists, he and his family were subject to repeated harassment and threats.

Truong testified that on February 10, 1991, at around 9 p.m., unidentified individuals shot at him while he was driving. He testified that he reported the incident to the police but that the police did nothing. On March 18, 1991, he was shot at again in his car at night. At the hearing, Mrs. Truong testified that she received threatening phone calls from unidentified individuals on a number of occasions. She stated that the calls would usually occur around midnight, and that the callers would state in Vietnamese or Italian that "if we leave the house they would shoot us." Martina Truong testified that her Italian classmates and neighbors discriminated against her because she was Asian.

The IJ found that all respondents had testified credibly, but that the Truongs were firmly resettled in Italy. Nonetheless the IJ granted asylum on humanitarian grounds. The BIA reversed, holding that humanitarian grounds were not an available basis for granting asylum.

■■■ We agree with the IJ and the BIA that the Truongs were firmly resettled in Italy within the meaning of 8 C.F.R. § 208.15. The Truongs lived in Italy for eleven years. In Italy, they had a resident status that required annual renewal, but Mr. Truong was able to obtain a job, Martina Truong attended school, and they were free to move around the country. The length of the Truongs' stay in Italy coupled with the freedom to get a job, go to school, and travel demonstrate their firm resettlement in Italy. *See Andriasian v. INS*, 180 F.3d 1033, 1043 (9th Cir.1999) ("[A] lengthy, undisturbed residence in a third country may establish a rebuttable presumption that an individual has the right to return to that country and remain there permanently."); *Cheo v. INS*, 162 F.3d 1227, 1229–30 (9th Cir.1998) (holding that a three-year stay in Malaysia created a presumption of firm resettle-

318

ment). The fact that the Truongs allowed their permission to return to Italy to lapse once they arrived in the United States does not alter the fact of their firm resettlement in Italy. *See Vang v. INS*, 146 F.3d 1114, 1117 (9th Cir.1998); *Yang v. INS*, 79 F.3d 932, 934 (9th Cir.1996).

■ Nonetheless, the Truongs may gain asylum despite firm resettlement in Italy if they are unable or unwilling to return to Italy because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42) (1994). The Truongs left Italy shortly after the second shooting, recounted above. In 1994, Mrs. Truong's sister described the continuing difficulties in Italy: "[S]ome compatriots and me continue to face troubles with [the Vietnamese embassy and the Italian communists]. Should someone express their opinion of religion or politics against the communist in Vietnam, sooner or later, they will be hit or shot at in the night." The Truongs raised their difficulties in Italy in the asylum application and in front of the IJ, but the BIA did not consider whether the Truongs had established eligibility for asylum based on persecution suffered in Italy. Credible evidence in the record supports such a persecution claim, but it is appropriate for the BIA to make the initial eligibility determination. *INS v. Ventura*, —— U.S. ——, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002). Therefore, we GRANT the petition for review and REMAND to the BIA to consider whether the Truongs have shown persecution or a well-founded fear of persecution in Italy.